**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| JAMES LAGRONE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | )     **Case number 4:07cv1255 DJS/TCM** |
| | ) |
| TROY STEELE, | ) |
| | ) |
| Respondent. | ) |

## ORDER AND REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

James LaGrone, a Missouri prisoner, petitions the United States District Court for the

Eastern District of Missouri for federal habeas corpus relief from a 2001 conviction.[1]  See

---

[1] Petitioner attached various documents to his habeas petition. First, there are several pages of copies of correspondence he had sent the judge presiding over the trial and postconviction relief (PCR) proceedings, dated September 4, 2002; his PCR attorney, dated September 7, 2002; his second PCR attorney, dated February 23, 2003 and March 31, 2003; and the appellate PCR office and his appellate PCR attorney, dated May 27, 2003 and June 9, 2003. (Pet. [Doc. 1 at 8-17].) In part, these letters mention that, against Petitioner's wishes, the amended postconviction motion did not include all the claims he had presented in his pro se postconviction motion.

Petitioner also attached a two-page "notice" that presents his disagreement with certain aspects of the record, i.e., that the lab report mentioned there were four holes in the coat when the prosecutor counted seven holes during trial; that the State reported there was no record of prior convictions for its witnesses but one State witness had a past criminal record; and that he understood the crime scene had been cleaned before the police arrived. (Pet. [Doc. 1 at 19-20].)

Additionally, Petitioner filed a copy of his pro se postconviction motion. (See Doc. 1-1 at 20-33.) This motion is not separately marked. When referring to that motion, the Court will refer to the copy of the motion provided by Respondent, Respondent's Exhibit G at 4-18.

The last attachment to Petitioner's habeas petition is a copy of the trial court's February 17, 2000, order stating that the State had given "a copy of 911 tape to [Petitioner's] attorney"; the investigating officer in complaint 99-1311-20 had reported there were no written statements by Petitioner; Jerry Matthews was deleted from the State's witness list; the State had investigated and

28 U.S.C. § 2254.  Respondents filed a Response to the Order to Show Cause Why a Writ of Habeas Corpus Should Not Issue (Response).[2]  Petitioner filed a reply.  This matter is before the undersigned United States Magistrate Judge for a review and a recommended disposition.  See 28 U.S.C. § 636(b).  Finding the claims in the federal habeas petition are procedurally barred and lack merit, the undersigned recommends denying the petition without further proceedings.

## Background

In relevant part, James LaGrone ("Petitioner") was charged, as a prior and persistent offender, with the following felonies:  first degree assault in violation of Missouri Revised Statutes § 565.050 and armed criminal action in violation of  Missouri Revised Statutes

---

found no other State witnesses had prior convictions; and Petitioner's motion to dismiss his counsel was denied.  This order is also available at page 36 of Respondent's Exhibit A.

Petitioner subsequently asked that a laboratory report be attached to his habeas petition, which was docketed as a supplemental petition for writ of habeas corpus.  See Supplmental Petition (Doc. 5).  While the Court has considered the laboratory report as part of the petition, the Court will refer to the petition and supplemental petition as the "petition."

[2]  Because social security numbers are in certain medical records, as well as the sentence and judgment, that are contained in Respondent's Exhibit A, the legal file for the direct appeal (state court appeal number 79471), and Petitioner's social security number is in Respondent's Exhibit B4, the transcript of the hearing and sentencing in the trial court, the Court will direct the Clerk of the Court to place those exhibits under seal.

The Court also notes that Respondent's Exhibit E, the order entered by the Missouri Court of Appeals in the direct appeal, is missing the second page.  When referring to that order, the Court will rely on the published version of that order, **State v. LaGrone**, 69 S.W.3d 907 (Mo. Ct. App. 2002) (per curiam).  The unpublished memorandum supporting that order that is in Respondent's Exhibit E is not missing any pages.

§ 571.015 for stabbing Whittonia Drummer (Whittonia)[3] on October 4, 1999; first degree assault in violation of Missouri Revised Statutes § 565.050.2 and armed criminal action in violation of Missouri Revised Statutes § 571.015 for the attempt to cause serious physical injury to Rosemary Drummer (Drummer)[4] by stabbing her on October 4, 1999; and burglary in the first degree in violation of Missouri Revised Statutes § 569.160 for unlawfully entering Drummer's home to assault her on May 23, 1998.[5] (Resp't Ex. A at 11-13; 140-42.)

Petitioner filed, through counsel[6] and pro se, several pretrial motions. (See, e.g., docket sheet Resp't Ex. A at 2-4.)

Prior to trial the judge, who would preside over the trial and postconviction proceedings, held a hearing to address various matters raised by Petitioner pro se, including his access to any grand jury records, which did not exist; his access to certain telephone records, which his counsel was working on; and his desire to present Jerry Matthews, whose address was unknown, as a witness at trial. (Resp't Ex. B1.)

In March 2001, before trial began, the trial court took up Petitioner's motions to

---

[3] Due to the victims' identical last names, the Court will refer to Whittonia Drummer, who is one of Rosemary Drummer's daughters, as Whittonia. The Court does not mean any disrespect in referring to her by her first name. The Court notes that throughout the record there are references to Whittonia as "Tony" and "Toni." See, e.g., Resp't Ex. B3 at 6, 183, 216, 248.

[4] On occasion, Drummer is referred to in the record as "Rose." (See, e.g., Resp't Ex. B3 at 203, 244.)

[5] Petitioner was also charged with felony resisting arrest. (Resp't Ex. A at 12.)

[6] Petitioner was simultaneously represented by two attorneys after his first attorney withdrew. The Court will refer to Petitioner's trial counsel in the singular.

suppress statements, which the trial court denied after hearing the testimony of Detective

Charlie Burton (Resp't Ex. B2 at 1-25); Petitioner's written motion for severance of the

burglary offense from the other offenses, and oral motion for severance of the resisting arrest

charge from the other charges, which the trial court denied (id. at 26-29); and Petitioner's oral

motion for a bench trial, which the trial court granted upon Petitioner's oral and written

waivers of his right to a trial by jury (id. at 30-41, 44; Resp't Ex. A at 119). The trial court

also accepted the parties' stipulation that Whittonia suffered serious physical injury as a

result of the October 4, 1999, stabbing in that she was hospitalized for ten days after

undergoing surgery for a severed lower intestine. (Resp't Ex. A at 120; Resp't Ex. B2 at 46-

47.)

During this pretrial hearing, the State also orally moved to amend the felony resisting

arrest charge to a misdemeanor resisting arrest charge, which the trial court granted.[7] (Resp't

Ex. B2 at 26-27, 44; 41.)

At trial on the five remaining felony charges, the State presented the testimony of

Drummer, who testified about the May 1998 and October 1999 incidents (Resp't Ex. B3 at

20-122); Karla James, the manager of the building where the 1999 stabbings took place who

---

[7] While the trial court granted the State leave to file an amended charging document to reflect the change in the resisting arrest charge during the pretrial hearing (id. at 41), that charging document, a substitute information in lieu of indictment, was not filed until sentencing (Resp't Ex. B4 at 3-4; Resp't Ex. A at 140-42).

Upon the amendment of the resisting arrest charge, Petitioner pleaded guilty to the misdemeanor resisting arrest charge; was sentenced to one year term of imprisonment at the Medium Security Institution; and then was discharged due to his completion of that sentence. (Id. at 41-45; Resp't Ex. B4 at 4-5.)

was present at the time of the stabbings and called 911[8] (id. at 122-56); Officer John Clobes, a police officer who testified about the the 911 call made by James after the October 4, 1999, incidents[9] (id. at 169-80); Officer Bert Heitert, a police officer then with the St. Louis Metropolitan Police Department who responded to the scene of the 1999 offenses, and identified pictures of the scene, including pictures depicting a knife handle and two knife blades broken on the floor (id. at 180-96); Arthur Harrison Young, one of the emergency medical personnel from the St. Louis Fire Department who responded to the scene of the 1999 offenses (id. at 197-213), Detective Charles Burton, of the St. Louis Police Department, who interviewed witnesses and Petitioner, and conducted an investigation of the scene of the 1999 offenses (id. at 214-46);[10] and Whittonia, who testified about the May 1998 and October 1999 incidents (id. at 251-86). The State also introduced medical records,[11] the 911

---

[8] During cross-examination of James, Petitioner's counsel asked whether she had ever pleaded guilty to a crime, and she admitted that she had pleaded guilty in California to possessing marijuana and was sentenced to four months in jail, and later reported that she was on unsupervised "probation" which expired in 2001. (Resp't Ex. B3 at 154-55, 166.) Petitioner's counsel moved for dismissal of the charges because information about this witness' prior conviction(s) had not been disclosed by the State. (Resp't Ex. B3 at 157.) After some discussion, including an indication by the State that it had not known about James's prior conviction(s) until her cross-examination, the Court denied the motion to dismiss. (Resp't Ex. B3 at 156-68.)

[9] The trial court denied Petitioner's motion to exclude the hearsay statements on the tape of the 911 telephone call. (Resp't Ex. B3 at 176-179.)

[10] The trial court granted Petitioner's motion to strike or in limine to bar from evidence the part of his statement that referred to an Uzi. (Resp't Ex. B3 at 223-30.) Another part of Petitioner's statement, reportedly referring to his comment that he had "done 12 years in the penitentiary for assaulting another woman" was not offered by the State; and the trial court denied as moot that part of Petitioner's motion to strike or in limine. (Id. at 230.)

[11] The Court excluded from Whittonia's medical records any reference to the Crime Victims Compensation Fund and granted Petitioner's motion to strike or exclude hearsay statements from

tape after the 1999 incidents, pictures of the scene of the 1999 incidents, two knives and knife handles from the 1999 stabbings, and the coat Drummer had worn when she was stabbed. (Id. at 100, 117, 118, 140, 179, 192, 198, 249, 275.)

Petitioner also testified at trial. (Id. at 291-370.) During his testimony, Petitioner presented an offer of proof about what happened to him after he left Drummer's home on May 23, 1998. (Id. at 295-301.) In particular, he testified that Shannon Drummer,[12] one of Drummer's daughters who was in the house on May 23, 1998, but not at the scene of the stabbing incidents on October 4, 1999, and her boyfriend approached Petitioner later the day of the 1998 incident, and the boyfriend shot at Petitioner, then Petitioner and the boyfriend were arrested. (Id.) Prior to the offer of proof, the trial court had noted it was "having a difficult time finding what the connection would be between any conduct on Shannon Drummer's part and the charges" the court had under consideration. (Id. at 297-98.)

The Court denied Petitioner's motions for judgment of acquittal at the close of the State's evidence and at the close of all the evidence (id. at 287-88, 371-72). After hearing evidence for two days, the trial court found Petitioner guilty of the charged felonies, entering both an oral ruling and written findings of fact and conclusions of law regarding Petitioner's guilt. (Resp't Ex. B3 at 396-99; Resp't Ex. A at 125-38.)

---

Drummer's medical records that attributed fault or described who caused the stabbing. (Resp't Ex. B3 at 248-49, 286-87.)

    [12] Due to the fact her last name and the victims' last names are the same, the Court will refer to Shannon Drummer as Shannon. The Court does not mean any disrespect in referring to her by her first name.

On April 20, 2001, the State provided proof of Petitioner's "prior and persistent" status (Resp't Ex. B4 at 6-19), and the trial court sentenced Petitioner, as a prior and persistent offender, to concurrent terms of imprisonment totaling twenty-five years on the felony convictions  (Resp't Ex. A at 143-46; Resp't Ex. B4 at 34-35.)

Petitioner timely filed an appeal, raising two points:  that the trial court erred in sustaining the prosecutor's objections to Petitioner's testimony that, after he left Drummer's home on May 23, 1998, Shannon's boyfriend shot at him; and that the trial court erred in failing to sever the 1998 burglary charge from the 1999 charges for trial.   (Resp't Ex. C at 11, 13, 15, 21.)

The Missouri Court of Appeals affirmed the judgment of conviction in a per curiam order.  **State v. LaGrone**, 69 S.W.3d 907 (Mo. Ct. App. 2002) (per curiam).  After noting that Petitioner did not challenge the sufficiency of the evidence, the appellate court stated in the unpublished memorandum supporting the order that the evidence revealed the following:

> In May 1998, [Petitioner] and . . . Drummer[] had been dating for about a year and a half.  On May 22, [Petitioner] and Drummer had a heated argument during which Drummer told [Petitioner] not to come to her house. On May 23, [Petitioner] telephoned Drummer's house from a nearby telephone and Drummer's daughter Whittonia took the call.  Shortly thereafter, [Petitioner] went to Drummer's house and kicked down her front door and her bedroom door.  Drummer was hiding in the bathroom. [Petitioner] then kicked down the bathroom door and grabbed and shook Drummer.  He told her "to stop playing with him" and if she ever left him, "he gonna' hurt [her] real bad." [Petitioner] then pushed her in the bathtub and left.
>
> On October 4, 1999, Drummer went to [Petitioner]'s house to pick up a VCR.  When she arrived, [Petitioner] was drinking beer in the kitchen with

the building manager, [Karla James,] and Drummer joined them. Subsequently, other people arrived, including Whittonia and another man. Eventually, [Petitioner] began to question the man about a woman that [Petitioner] had seen in the man's room. Drummer interrupted and said, "What the f- - - you want to know what she was doing up in his room for?" [Petitioner] jumped up and replied,"Bitch, you gonna' talk to me like that in front of these people?" [Petitioner] and Drummer continued to curse at each other.

[Petitioner] told Drummer to go in his room with him, but Drummer refused because she thought he was "probably going to hit [her] upside [her] head or something." She told [Petitioner] that she wanted to leave. [Petitioner] grabbed at his bedroom keys that were hanging on a cloth chain around Drummer's neck and said, "Give me my keys then, bitch. Give me my keys." [Petitioner] pulled Drummer towards him. Whittonia told [Petitioner] to let her mother go. [Petitioner] grabbed a knife and cut the keys from around Drummer's neck. Whittonia grabbed a pot of hot water, threw the water on [Petitioner]'s face, and hit him on the head with the pot. [Petitioner] walked off.

Drummer wanted to get her coat before she left so she kicked [Petitioner]'s bedroom door down and got her coat. By that time, [Petitioner] was coming back up the stairs and he told Drummer that he still wanted to talk to her. Whittonia told [Petitioner] to let her mother leave, and [Petitioner] told her to "get [her] ass out of [his] business." [Petitioner] then stabbed Whittonia in the abdomen with the knife.

[Petitioner] turned to Drummer and said, "You want some too, bitch? I'm going to give you some too." [Petitioner] began stabbing Drummer until the knife broke. [Petitioner] got another knife and continued stabbing Drummer. Eventually, [Petitioner] stopped stabbing Drummer and left.

Resp't Ex. E at 2-3 (footnote omitted) (alterations other than "[Petitioner]" or "[]" in original). The appellate court issued its direct-appeal mandate on April 10, 2002. (Resp't Ex. F.) Petitioner did not seek transfer to the Missouri Supreme Court or file a petition for writ of certiorari in the United States Supreme Court. See **State v. LaGrone**, No. ED79471 (M o .  C t .  A p p .),  a t  M i s s o u r i  C a s e . n e t

Petitioner timely filed a pro se motion for postconviction relief under Missouri Supreme Court Rule 29.15 (Resp't Ex. G at 4-18) and then, through counsel, an amended motion for postconviction relief, including a request for evidentiary hearing (Id. at 21-31.) In his amended motion, Petitioner alleged only that his trial counsel was ineffective in failing to subpoena Shannon to testify at trial regarding the shooting after the May 23, 1998 incident to support a theory of self-defense to the 1999 incidents. (Resp't Ex. G at 24.)

On January 24, 2006, the motion court denied Petitioner's request for an evidentiary hearing, finding he had not alleged facts which, if true, would entitle him to relief, and denied Petitioner's postconviction motion. (Id. at 41-49.) In denying relief, the motion court noted, in relevant part, that

> 3. [Petitioner] alleges in his amended motion that his trial counsel was ineffective for failing to subpoena Ms. Shannon Drummer, daughter of Rosemary Drummer, to testify at trial. [Petitioner] states that his defense theory was that he acted in self-defense when he stabbed both Rosemary Drummer and her daughter Whittonia Drummer. [Petitioner] states that he would testify that after an incident on May 23, 1998 between himself and Rosemary Drummer, that Ms. Drummer's daughter Shannon Drummer and Shannon's boyfriend approached him, and that the boyfriend whose name he did not know, fired a gun at him and told him he was tired of him (Tr. 297) [Resp't Ex. B3]. [Petitioner] states that Shannon's testimony regarding this incident was relevant to the state of hostile relations between himself and the members of the Drummer household and their propensity to quickly resort to violence and would have illustrated his fear and put his actions on May 23, 1998 and October 4, 1999 in context. [Petitioner] states that when Whittonia Drummer struck him with a pot of water he was in fear of imminent lethal attack. [Petitioner] further states that he told his trial counsel about this witness and that she was available to testify.

*   *   *

This allegation is without merit and denied. The circumstances of the instant case wherein [Petitioner] stabbed two persons did not support a theory of self-defense. Even if Shannon Drummer had testified as [Petitioner] alleges, self-defense would still not have been appropriate or viable. [The motion court then summarized the evidence of the 1998 and 1999 incidents.]

Trial counsel took pretrial depositions of Shannon Drummer,[13] Rosemary Drummer, and Whittonia Drummer. Shannon Drummer was deposed regarding the incident in May 1998. There is nothing in her testimony or circumstances of that event which would have provided a viable defense, supported a finding of self-defense or aided in such a defense. The Court finds that this witness would not have provided a viable defense and that if Shannon Drummer had been called as a witness at trial to relate the circumstances of this event there is no probability that the outcome at trial would have been different. . . . This Court notes that [Petitioner]'s propensity for violence was brought out in Shannon Drummer's deposition testimony. The Court also notes that at sentencing [Petitioner] was asked whether his counsel failed to call any witnesses [Petitioner] wanted at trial and [Petitioner] did not mention Shannon Drummer (Sentencing Tr. At 54 [Resp't Ex. B4]).

Defense counsel argued that [Petitioner] acted out of sudden passion. This contention was considered by the trial court and rejected based on the facts of the instant case. This Court found that the stabbing of both women did not occur as the result of sudden passion directly caused by and arising out of adequate cause of Whittonia throwing water on [Petitioner].

In this allegation [Petitioner] contends that Shannon Drummer's testimony regarding the incident would show the Drummer household's propensity to quickly resort to violence and would have illustrated the fear [Petitioner] felt, and put his actions on May 23, 1998 and October 4, 1999 into context. He further contends that his actions were motivated by his reasonable fear of imminent bodily harm and supported his theory that he acted in self-defense when he stabbed both Whittonia Drummer and Rosemary Drummer. The facts of the instant case do not support self-defense or that his actions were motivated by a reasonable fear of imminent bodily harm. This Court further notes that [Petitioner] testified at trial that it was an accident that he stabbed Rosemary Drummer seven times. (Tr. 364 [Resp't Ex. B3]) A defendant is generally not entitled to rely on self defense where he claims

---

[13] Shannon's deposition testimony is at pages 67-80 of Respondent's Exhibit G.

accident, as self-defense and accident are inconsistent. See <u>State v. Avery</u>, 120 S.W.3d 196, 201 (Mo. banc 2003).

(<u>Id.</u> at 43- 48) (footnote added.)

In his timely postconviction appeal, Petitioner raised one point: that the motion court erred in denying postconviction relief without a hearing because his defense was self-defense and Shannon "would have assisted him in making that defense by testifying about the hostile environment in the [Drummer] household and bias against him."  (Resp't Ex. H at 13, 15.)

In a per curiam order, the appellate court affirmed the postconviction court's judgment.  (Resp't Ex. J; **LaGrone v. State**, 216 S.W.3d 202 (Mo. Ct. App. 2007) (per curiam).)  In the unpublished memorandum supporting the order, the Missouri Court of Appeals stated in relevant part:

> In his sole point, [Petitioner] contends that the motion court erred in denying his Rule 29.15 motion without hearing because his trial counsel was ineffective in that he failed to subpoena a potential witness who would have supported [Petitioner]'s self-defense claim.
>
> The motion court, which was also the trial court and the fact finder, determined that contrary to [Petitioner]'s contentions, the stabbings committed by [Petitioner] were not the result of self-defense.  The motion court further noted that nothing in the [Petitioner]'s proposed witness's deposition would not [sic] have aided [Petitioner] in his assertion of self-defense.
>
> The motion court's conclusions were not clearly erroneous.  In a post-conviction claim of ineffective counsel with regard to failure to investigate or produce witnesses, a movant must identify who the witnesses are, whether or not counsel was informed of their existence, establish that the witnesses could have been located through reasonable investigation, would have testified if called, and their testimony would have provided a viable defense. <u>State v. Jones</u>, 979 S.W.2d 171, 187 (Mo. banc 1998) (quoting: <u>State v. Dudley</u>, 819 S.W.2d 51, 56 (Mo. App. S.D. 1991)).  Moreover, if a potential witness' testimony would not have unqualifiedly support[ed] [Petitioner], failure to call

such a witness is not ineffective assistance of counsel. Hamilton v. State, 770 S.W.2d 346 (Mo. App. E.D. 1989).

Here, after depositions, [Petitioner]'s counsel determined that [Petitioner]'s proposed witness would not be valuable to [Petitioner]'s case. [Petitioner] cannot show that his proposed witness would have provided a viable defense and that his counsel lacked the diligence and care of a reasonable counsel in not calling this witness. [Petitioner]'s theory of the case contradicted Missouri case law. [Petitioner] claimed that the stabbing was accidental and that he acted in self defense. These inconsistent theories generally cannot be submitted together. See . . . Avery, 120 S.W.3d [at] 201 . . . (noting that instructions of self-defense and accident may not both be submitted to the jury).

In addition, [Petitioner]'s counsel's choice not to subpoena [Petitioner]'s proposed witness may be viewed as trial strategy. "Reasonable choices of trial strategy, no matter how ill-fated they appear in hindsight, cannot serve as a basis for a claim of ineffective assistance of counsel." Anderson v. State, 196 S.W.3d 28, 33 (Mo. 2006) [(en banc) (per curiam opinion)]. The choice of witnesses is a matter of trial strategy and will not support a claim of ineffective assistance of counsel. State v. Harris, 870 S.W.2d 798, 816-817 (Mo. 1994) [(en banc)]. Here, because [Petitioner]'s counsel's choice not to call [Petitioner]'s proposed witness was part of a defined choice in presenting the case, this decision cannot support a claim of ineffective assistance of counsel.

Finally, [Petitioner] cannot prove prejudice. [Petitioner]'s case was heard before a judge, not a jury. The motion court announced as much. "This court finds that this witness would not have provided a viable defense and that if Shannon Drummer had been called as a witness at trial to relate the circumstances of this event there is no probability that the outcome at trial would have been different." This declaration forecloses [Petitioner]'s argument.

Resp't Ex. J at 3-4. The appellate court issued its postconviction mandate on March 21, 2007. (Resp't Ex. K.)

Petitioner then timely filed his petition for federal habeas relief. Petitioner presents two grounds seeking relief because his trial counsel provided ineffective assistance in

violation of the Sixth and Fourteenth Amendments. In his first ineffective assistance claim, Petitioner argues his trial counsel provided ineffective assistance (a) by failing to present evidence supporting a claim of self-defense, namely, that a pot of water had been thrown in his face and he had been hit in the head before he assaulted the victims; (b) by failing to subpoena critical witnesses, including Shannon and Jerry Matthews, who could have testified to support his claim of self-defense; (c) by presenting a crime of passion defense contrary to his desires and after only 1.5 hours of consultation with him; (d) by failing to obtain relevant telephone records, to challenge the reliability of the physical evidence (i.e., knives) introduced at trial, and to argue that the crime scene was contaminated, despite his requests that counsel do so; and (e) by failing to introduce evidence of his torn shirt in support of the self-defense claim. (Pet. at 5 [Doc. 1 at 4].) For his second ineffective assistance of trial counsel claim, Petitioner alleges his trial counsel was ineffective because counsel was "inadequately prepared" or "not prepared," "got involved in [his] case only four months before trial," and failed to advise him that he had a right to testify during the suppression hearing. (Id.) As his third ground for relief, Petitioner contends the State failed to disclose evidence favorable to him, specifically by failing to disclose the building manager at the scene on October 4, 1999, had a prior conviction and failing to disclose "any record of its witnesses' grand jury testimony [which is] Jencks material which was vital to [his] defense." (Id.)

Respondent counters that all the claims except the claim in 1(b) are procedurally barred, and the claim in 1(b) lacks merit. Alternatively, Respondent urges all the claims lack

merit.  Because the Court finds all claims except the claim in 1(b) are procedurally barred, the Court will only address the merits of the claim in 1(b).

**Discussion**

Procedural Bar.  With respect to all of Petitioner's claims except the claim in ground 1(b) that trial counsel was ineffective for failing to subpoena Shannon, Respondent argues that the claims are procedurally defaulted because they were not raised in the amended postconviction motion and were not presented in the postconviction appeal.  Petitioner counters that they should not be procedurally barred because he presented them in his pro se postconviction motion; he asked his postconviction attorney to include them in the amended postconviction motion; and they are not frivolous.

While Petitioner's ineffective assistance of counsel claims had to be presented in his postconviction proceeding, Mo. S. Ct. Rule 29.15(a), it is not clear that his contention the State failed to disclose grand jury materials and its witnesses' prior criminal records should be raised in such a proceeding.  "A post-conviction motion does not substitute for a direct appeal. . . .  Issues that could have been raised on direct appeal -- even if constitutional claims -- may not be raised in post-conviction motions, except where fundamental fairness requires otherwise and only in rare and exceptional circumstances."  **State v. Tolliver**, 839 S.W.2d 296, 298 (Mo. 1992) (en banc) (citation omitted).  Here, two relevant discussions were held, one prior to trial in which the State's failure to disclose to Petitioner any grand jury materials was addressed and one during trial in which the State's failure to disclose a witness's prior convictions was addressed.  (See Resp't Ex. B1 at 7-9; Resp't Ex. B3 at 156-

69.)  Nothing in the record suggests that fundamental fairness or rare and exceptional circumstances existed so as to permit the consideration in the postconviction proceeding of Petitioner's claim the State failed to disclose grand jury materials or prior criminal records of its witnesses, alleged non-disclosures Petitioner was aware of before the end of trial.  For purposes of resolving this federal habeas proceeding, however, the Court will assume, without deciding, that Petitioner could have pursued in the postconviction proceeding his claim that the State failed to disclose this information.  Cf. **Gill v. State**, 300 S.W.3d 225, 231 (Mo. 2009) (en banc) (considering and rejecting a Brady violation claim in a postconviction proceeding).

Petitioner presented in his pro se Rule 29.15 motion the same claims that he pursues in this proceeding.  In his amended postconviction motion and his postconviction appeal, however, he raised only his claim that his trial counsel provided ineffective assistance in failing to subpoena Shannon.

"Claims that have not been presented to the state courts, and for which there are no remaining state remedies are procedurally defaulted." **Skillicorn v. Luebbers**, 475 F.3d 965, 976 (8th Cir. 2007); accord **Echols v. Kemna**, 511 F.3d 783, 785 (8th Cir. 2007) ("If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted" (internal quotation marks omitted) (quoting Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007)).  Thus, claims that should have been but were not presented in a Rule 29.15 motion or in the appeal from a denial of such a motion are procedurally defaulted.  See **Interiano v. Dormire**, 471 F.3d 854, 856 (8th Cir. 2006) (claims not presented in Rule 29.15

motion or included in appeal are procedurally defaulted); **Osborne v. Purkett**, 411 F.3d 911, 919 (8th Cir. 2005) (claim raised in Rule 29.15 motion but not presented on appeal was procedurally barred); **Lyons v. Luebbers**, 403 F.3d 585, 593 (8th Cir. 2005) ("A section 2254 applicant's failure to raise a claim in state postconviction proceedings results in procedural default of that claim").

Therefore, all of Petitioner's claims except the ineffective assistance of trial counsel claim for failure to subpoena Shannon are defaulted.

Petitioner urges none of his claims are defaulted because he included them in his pro se postconviction motion. Under Missouri case law, however, the amended postconviction motion supersedes the pro se postconviction motion, and any claims in the pro se motion for postconviction relief were no longer before the motion court, except to the extent they were included in the amended motion. See **Tinsley v. State**, 258 S.W.3d 920, 927 (Mo. Ct. App. 2008) ("the only claim which the motion court could have considered and determined was that raised in the amended . . . motion for postconviction relief [because t]he filing of an amended motion superseded [the] pro se motion and rendered it a nullity" (citations omitted)); **Day v. State**, 143 S.W.3d 690, 693-94 (Mo. Ct. App. 2004) ("The amended motion supersedes [the] pro se motion and renders it a nullity. . . . . Therefore, the allegations of a timely-filed amended motion would be the only matters before the motion court" (citation omitted)); **Norville v. State**, 83 S.W.3d 112, 114 (Mo. Ct. App. 2002) ("When an amended [postconviction] motion is filed, issues that were set forth in a previous pro se motion, but which are not included in the amended motion, are not for consideration);

**Leach v. State**, 14 S.W.3d 668, 670-71 (Mo. Ct. App. 2000) (a pro se allegation not included in the amended motion for postconviction relief is "not properly before the motion court"). There is no dispute that the claim regarding Petitioner's trial counsel's failure to subpoena Shannon was the only claim set forth in the amended postconviction motion. Because Petitioner's claims, other than the ineffective assistance of counsel claim for failing to subpoena Shannon, were not properly pursued in Missouri's courts, they are procedurally defaulted.

"Unless a habeas petitioner shows cause and prejudice or that he is actually innocent of the charges, a [federal habeas] court may not reach the merits of procedurally defaulted claims in which the petitioner failed to follow applicable state procedural rules in raising the claims." **Skillicorn**, 475 F.3d at 976-77. "'[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" **Greer v. Minnesota**, 493 F.3d 952, 957 (8th Cir. 2007) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). There is no exhaustive catalog of the objective impediments, nor have the precise contours of the cause requirement been clearly defined. **Ivy v. Caspari**, 173 F.3d 1136, 1140 (8th Cir. 1999). What has been established is that a "fail[ure] to raise [a] claim despite recognizing it, does not constitute cause for a procedural default." **Murray**, 477 U.S. at 486.

Clearly, the basis for Petitioner's § 2254 claims was available to his postconviction counsel, because the claims were in the pro se postconviction motion; however, "ineffective

assistance of postconviction counsel is not a cause for procedural default."[14]  **Oglesby v. Bowersox**, 592 F.3d 922, 925-26 (8th Cir. 2010), petition for cert. filed, __ U.S.L.W. __ (U.S. June 17, 2010) (No. 09-11484); accord **Zeitvogel v. Delo**, 84 F.3d 276, 279 (8th Cir. 1996) ([t]o establish cause, [the petitioner] must show something beyond the control of postconviction cousnel, like state interference, actually prevented postconviction counsel from raising the claims and presenting the evidence in state court").  In **Interiano**, the Eighth Circuit did not excuse a default caused by postconviction counsel's failure to raise claims in an amended Rule 29.15 motion or in the appeal from the denial of that motion which had been presented in the petitioner's pro se motion.  **Interiano**, 471 F.3d at 857.  Similarly, the omission of the grounds, other than the ground addressing the failure to subpoena Shannon, from Petitioner's amended motion and from the postconviction appeal are not to be excused.

Because no cause has been established for Petitioner's procedural default, it is unnecessary to consider whether he has demonstrated prejudice.  **Abdullah v. Groose**, 75 F.3d 408, 413 (8th Cir. 1996).

Petitioner's defaulted grounds may be reached absent a showing of cause and prejudice for his procedural default if he establishes that a failure to do so will result in a fundamental miscarriage of justice.  "Procedurally barring a claim that establishes actual innocence is considered a fundamental miscarriage of justice."  **Cox v. Burger**, 398 F.3d

---

[14]  Therefore, Petitioner's argument that his postconviction counsel failed to include in the amended postconviction motion the grounds set forth in Petitioner's pro se postconviction motion does not establish cause for the procedural default or otherwise provide a basis for considering the merits of those claims.

1025, 1031 (8th Cir. 2005). "[I]n noncapital cases[, such as this one,] the concept of actual innocence is 'easy to grasp,' because 'it simply means the person didn't commit the crime'" **Embrey v. Hershberger**, 131 F.3d 739, 741 (8th Cir. 1997) (en banc) (citation omitted) (quoting United States v. Richards, 5 F.3d 1369, 1371 (10th Cir. 1993)). A showing of actual innocence requires new evidence and a "show[ing] that 'it is more likely than not that no reasonable juror would have convicted him in light of th[at] new evidence.'" **Osborne**, 411 F.3d at 920 (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim.'"[15] **Cagle v. Norris**, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).

Petitioner does not submit any new evidence of his actual innocence, nor does he allege that such evidence exists.

For the foregoing reasons, all the grounds for relief presented in Petitioner's habeas petition are procedurally barred, except for the claim that his trial counsel was ineffective in failing to subpoena Shannon.

Merits. In his sole claim that is not procedurally barred from habeas review on the merits, Petitioner urges his trial counsel provided ineffective assistance in failing to subpoena

---

[15] Therefore, Petitioner's position that his claims are not frivolous is insufficient to allow this Court to consider the merits of the claims he did not present to the state courts in the proper manner.

Shannon as a witness at trial.

Title 28 U.S.C. § 2254(d) mandates that a federal court grant habeas relief on a claim that was adjudicated on its merits by the State courts *only* if the adjudication "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States'" or "'resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" **Collier v. Norris**, 485 F.3d 415, 421 (8th Cir. 2007) (quoting § 2254(d)); accord **Christenson v. Ault**, 598 F.3d 990, 994 (8th Cir. 2010). "'[A] decision is "contrary to" federal law . . . if a state court has arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if it "confront[ed] facts that are materially indistinguishable from a relevant Supreme Court precedent" but arrived at an opposite result.'" **Collier**, 485 F.3d at 421 (quoting Davis v. Norris, 423 F.3d 868, 874 (8th Cir. 2005)) (all but first alteration in original); accord **Losh v. Fabian**, 592 F.3d 820, 823 (8th Cir. 2010). "'A state court unreasonably applies clearly established federal law when it "identifies the correct governing principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."'" **Collier**, 485 F.3d at 421 (quoting Davis, 423 F.3d at 874) (alteration in original). This standard requires that the state court's application be "objectively unreasonable." **Mark v. Ault**, 498 F.3d 775, 786 (8th Cir. 2007); see **Losh**, 592 F.3d at 823 (under the unreasonable application clause of the AEDPA, a habeas petition may be granted "only if the state court

applied the correct governing legal principle in an objectively unreasonable manner").  "It is not enough for the federal habeas court to conclude that, in its independent judgment, it would have applied federal law differently from the state court. . . ." **Mark**, 498 F.3d at 786.  Importantly, "[o]nly rulings in Supreme Court decisions issued before the state court acts are considered clearly established federal law, for a state court does not act contrary to or unreasonably apply clearly established federal law if there is no controlling Supreme Court holding on point." **Losh**, 592 F.3d at 823 (citations omitted).  The state court does not need to cite to Supreme Court cases, "'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" **Revels v. Sanders**, 519 F.3d 734, 739 (8th Cir.) (quoting Early v. Packer, 537 U.S. 3, 8 (2002) (per curiam)), cert. denied, 129 S.Ct. 598 (2008).

"[T]he 'summary nature' of the [state court's] discussion of [a] federal constitutional question does not preclude application of [§ 2254's] standard." **Brown v. Luebbers**, 371 F.3d 458, 462 (8th Cir. 2004) (en banc); accord **Weaver v. Bowersox**, 438 F.3d 832, 839 (8th Cir. 2006) (quoting Brown, 371 F.3d at 462).  A state court's summary decision is presumed to be on the merits for purposes of habeas review. **Carter v. Bowersox**, 265 F.3d 705, 712 (8th Cir. 2001); see **Weaver** 438 F.3d at 839 (concluding a summary disposition by the Missouri Supreme Court was an "adjudication of the [habeas claims] on the merits").

Additionally, in a federal habeas action pursued by a state prisoner, "a determination of a factual issue made by a State court shall be presumed to be correct" unless rebutted by the petitioner by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  The deference

owed by a federal habeas court to a state court's findings of fact includes deference to state court credibility determinations, **Smulls v. Roper**, 535 F.3d 853, 864 (8th Cir. 2008) (en banc), <u>cert. denied</u>, 129 S.Ct. 1905 (2009), and to "[a] state court's findings of fact made in the course of deciding" an ineffective assistance of counsel claim, **Odem v. Hopkins**, 382 F.3d 846, 849 (8th Cir. 2004).  Moreover, the presumption of correctness of findings of fact applies to the factual determinations made by both the state trial court and the state appellate court.  **Smulls**, 535 F.3d at 864-65.

An accused's Sixth Amendment right to the assistance of counsel is a right to the effective assistance of counsel.  **Marcrum v. Luebbers**, 509 F.3d 489, 502 (8th Cir. 2007) (citing <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 377 (1986)).  "The right to effective assistance of counsel 'is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversary process.'" **Smith v. Rogerson**, 171 F.3d 569, 572 (8th Cir. 1999) (quoting <u>Kimmelman</u>, 477 U.S. at 374).  "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [relevant proceeding] cannot be relied on as having produced a just result.'" **Jackson v. Gammon**, 195 F.3d 349, 354 (8th Cir. 1999) (quoting <u>Kellogg v. Skon</u>, 176 F.3d 447, 452 (8th Cir. 1999)) (second alteration in original). "To show a constitutional violation of the right to counsel a [petitioner] must show first, that counsel's performance was deficient, and second that counsel's errors prejudiced the defense." **Marcrum**, 509 F.3d at 502 (citing <u>Strickland v. Washington</u>, 466 U.S. 668,

687 (1984)).

To establish that counsel's performance was deficient, a petitioner must show that counsel "'made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" **Greiman v. Thalacker**, 181 F.3d 970, 972 (8th Cir. 1999) (quoting Strickland, 466 U.S. at 687). More specifically, a petitioner must demonstrate that "counsel's performance was so deficient as to fall below an objective standard of the customary skill and diligence displayed by a reasonably competent attorney." **Armstrong v. Kemna**, 534 F.3d 857, 863 (8th Cir. 2008) (citing Strickland, 466 U.S. at 687-94). "Only reasonable competence, the sort expected of the 'ordinary fallible lawyer,' is demanded by the Sixth Amendment." **White v. Helling**, 194 F.3d 937, 941 (8th Cir. 1999) (quoting Nolan v. Armontrout, 973 F.2d 615, 618 (8th Cir. 1992)). The court is "highly deferential" in analyzing counsel's conduct and "indulg[es] a strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment.'" **Armstrong**, 534 F.3d at 863 (quoting Middleton v. Roper, 455 F.3d 838, 846 (8th Cir. 2006)). "There is a strong presumption that counsel's strategic choices were reasonable." **Forsyth v. Ault**, 537 F.3d 887, 891 (8th Cir. 2008), cert. denied, 129 S.Ct. 1044 (2009). Moreover, "[t]here is a strong presumption that counsel's challenged actions or omissions were, under the circumstances, sound trial strategy." **Garrett v. Dormire**, 237 F.3d 946, 949-50 (8th Cir. 2001).

To establish prejudice, a petitioner must demonstrate "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different.'" **Armstrong v. Kemna**, 590 F.3d 592, 595-96 (8th Cir.) (quoting McCauley-Bey v .Delo, 97 F.3d 1104, 1105 (8th Cir. 1996)), cert. denied, 130 S.Ct. 3369 (2010). "'A reasonable probability is [a probability] sufficient to undermine confidence in the outcome.'" **Armstrong**, 590 F.3d at 596 (quoting McCauley-Bey, 97 F.3d at 1105). The petitioner bears the burden of showing such a reasonable probability. **Lawrence v. Armontrout**, 961 F.2d 113, 115 (8th Cir. 1992).

The question of prejudice from counsel's performance need not be reached if the performance was not deficient. See **Parkus v. Bowersox**, 157 F.3d 1136, 1140 (8th Cir. 1998). Conversely, the question of counsel's allegedly deficient performance need not be reached if a petitioner has failed to show prejudice. **Williams v. Locke**, 403 F.3d 1022, 1025 (8th Cir. 2005) (citing Strickland, 466 U.S. at 697).

Petitioner claims his trial counsel provided ineffective assistance in failing to subpoena Shannon. The Missouri Court of Appeals affirmed the motion court's denial of this claim. (Resp't Ex. J.) In relevant part, the appellate court noted Petitioner could not prove prejudice because the factfinder, who also presided over the postconviction proceedings, stated that Shannon "would not have provided a viable defense" and "if [she] had been called as a witness at trial . . . there is no probability that the outcome at trial would have been different." (Id.)

This conclusion is reasonable under the circumstances and supported by the record. First, Shannon was not present during the October 4, 1999, incidents. (Resp't Ex. B3 at 49-50, 128-32.) Second, in describing the chronology of the incidents on October 4, 1999, the

Missouri Court of Appeals in the direct appeal mentioned that, before the stabbings occurred on October 4, 1999, "Whittonia grabbed a pot of hot water, threw the water on [Petitioner]'s face, and hit him on the head with the pot. [Then Petitioner] walked off." (Resp't Ex. E at 3.) It was not until Petitioner later returned to the scene, when Petitioner met Drummer, who was trying to leave, that the stabbings took place. (Id.) The record does not reveal that at that time Drummer or Whittonia did anything, other than speak, before the stabbings began. (Id.) Moreover, the testimony of the two victims and a person present at the scene when the stabbings occurred and the testimony of Drummer and Whittonia about the May 1998 incident,[16] in addition to the testimony of the officers who responded to and investigated the October 1999 scene, the physical evidence admitted at trial, and Petitioner's trial testimony, constitute strong support for the trial court's determination that Petitioner is guilty of the charged offenses. The Court finds the state court's conclusion that Petitioner was not prejudiced by his counsel's failure to subpoena Shannon is supported by the record; and also concludes Petitioner has not established prejudice for the ineffective assistance of counsel

---

[16] Notably, the trial court made the following credibility findings in its findings of fact and conclusions of law:

> 22. The testimony of Detective Burton, Officers Clobes and Heitert, Paramedic Young, Rosemary Drummer and Whittonia Drummer was credible. The testimony of Karla James was generally credible. The testimony of [Petitioner] was credible except as to his explanation of what he did after he entered Rosemary Drummer's apartment . . . on May 23, 1998, and as to his account of the events immediately leading up to and during his stabbing of Rosemary Drummer and Whittonia Drummer.

Resp't Ex. A at 133.

claim regarding the failure to subpoena Shannon.  Due to the absence of prejudice, the question of Petitioner's counsel's allegedly deficient performance need not be reached. **Williams**, 403 F.3d at 1025 (citing Strickland, 466 U.S. at 697).  This ground is without merit.

Hearing.  Petitioner summarily asks for a hearing, without citing 28 U.S.C. § 2254(e)(2) and related case law.  Reply at 2 (Doc. 14 at 2).  Respondent has not addressed this request.

Only when a "habeas petitioner 'was unable to develop his claim in state court despite diligent effort' is an evidentiary hearing not barred by" the statute.  **Williams v. Norris**, 576 F.3d 850, 860 (8th Cir. 2009), (quoting Williams v. Taylor, 529 U.S. 420, 437 (2000)), petition for cert. filed, __ U.S.L.W. __ (U.S. Apr. 22, 2010) (No. 09-10382).  Petitioner has not argued or shown he was unable to develop any of his habeas claims in state court "despite [his] diligent effort."  Moreover, Petitioner "has not argued that either exception in § 2254(e)(2)(A) and (B) applies, and it is apparent that neither does."  **Id.** at 862.

If the correspondence Petitioner attached to his habeas petition satisfies the "diligent effort" requirement so that an evidentiary hearing is not statutorily barred, it is within this Court's discretion whether or not to grant such a hearing.  **Id.**  The United States Supreme Court has noted that the basic rule that the district courts in habeas cases have "sound discretion" whether or not to grant an evidentiary hearing has not changed with the passage of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  **Schriro v. Landrigan**, 550 U.S. 465, 473 (2007).  There is no need for an evidentiary hearing on the

one claim that is not procedurally barred because the available record allows consideration of that claim on the merits; no further development of facts is necessary to resolve that claim. The other claims are procedurally barred and may not be further considered by a federal habeas court. Accordingly, the Court concludes it is appropriate to deny a hearing based on the available record. See **Crawford v. Norris**, 363 Fed. Appx. 428 (8th Cir. 2010) (unpublished per curiam opinion) (affirming district court's decision not to hold an evidentiary hearing in a habeas case in which the state postconviction court had not held a hearing). Therefore, Petitioner's request for an evidentiary hearing is denied.

### Conclusion

Petitioner properly presented only one of his grounds for relief, the claim that his trial counsel provided ineffective assistance in failing to subpoena Shannon to testify at trial, to the state courts. As to that claim, the state courts' conclusion that the claim was without merit is not contrary to clearly established federal law, is not an unreasonable application of such law, and is not an unreasonable determination of the facts. All of Petitioner's other claims are procedurally barred. Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's request for an evidentiary hearing is **DENIED**.

**IT IS FINALLY RECOMMENDED** that the 28 U.S.C. § 2254 petition of James LaGrone be **DENIED** without further proceedings.

The parties are advised that they have **August 27, 2010,** in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an

extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this 13th day of August, 2010.